[No. B168229. Second Dist., Div. Eight. Aug. 23, 2004.]

CITY OF MALIBU, Plaintiff and Appellant, v.
CALIFORNIA COASTAL COMMISSION, Defendant and Respondent;
TAXPAYERS FOR LIVABLE COMMUNITIES et al., Interveners and
Respondents.

990

**COUNSEL**

Jenkins & Hogin, Christi Hogin and Gregg Kovacevich for Plaintiff and Appellant.

Celia A. Brewer for League of California Cities as Amicus Curiae on behalf of Plaintiff and Appellant.

Law Offices of Dennis J. Seider and Dennis J. Seider for Californians for Local Coastal Planning as Amicus Curiae on behalf of Plaintiff and Appellant.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, J. Matthew Rodriguez, Assistant Attorney General, John A. Saurenman, G. R. Overton and Daniel A. Olivas, Deputy Attorneys General, for Defendant and Respondent.

Corin L. Kahn; and Linda Thornton for Interveners and Respondents.

OPINION

**RUBIN, Acting P. J.**—The City of Malibu appeals from several orders thwarting its escape from the California Coastal Commission's "local coastal program" for the city. (Pub. Resources Code, § 30166.5.) We affirm.

## FACTS AND PROCEDURAL HISTORY

The City of Malibu (Malibu) lies in California's coastal zone. Consequently, the California Coastal Act obligated Malibu to develop a "local coastal program" (LCP) to guide its development. (Pub. Resources Code, §§ 30108.6, 30500 et seq.)[1] With an LCP in place, Malibu shoulders the burden of processing coastal development permits; otherwise, the responsibility rests with the California Coastal Commission (the Commission). As of 2000—nine years after its incorporation as a city—Malibu had not implemented an LCP, thus forcing the Commission to continue processing coastal development permits for the city.

Apparently frustrated by the amount of resources it had spent processing applications from Malibu property owners, the Commission sought legislative relief. In September 2000, the Governor signed Assembly Bill No. 988, which amended the Coastal Act to add section 30166.5 to the Public Resources Code. The new statute directed the Commission to write an LCP for Malibu, and in September 2002, the Commission did so.[2] The next month, Malibu voters qualified for their local ballot a referendum on the LCP.

With the referendum pending, Malibu declared the Commission's LCP did not take effect. Thus, according to Malibu, the Commission continued to be responsible for processing development permits. The Commission disagreed. It argued Malibu voters could not subject the Commission's acts to a referendum; on the contrary, the LCP was enforceable, and Malibu henceforth was responsible for processing permits.

Malibu filed a petition for writ of mandate against the Commission. The petition sought an order compelling the Commission to process permits while

---

[1] All further section references are to the Public Resources Code.

[2] Malibu claims it was in the midst of preparing its own LCP by late 1999, and that the Commission staff twice rejected out-of-hand LCP's submitted by Malibu. The record is not so clear-cut. In October 1999, Malibu submitted for the Commission's "preliminary review" its "draft" land use policies, which the city described as a "first stage" subject to later modification with commentary, maps, charts, and appendices. In March 2000, Malibu asked the Commission to informally review an "administrative draft" land use plan, which was ready for public hearings and comments. Thus, when the Governor signed Assem. Bill No. 988 in September 2000, Malibu had yet to submit a finished LCP. Only close to a year later, presumably spurred by Assem. Bill No. 988, did Malibu finally adopt its own LCP. But, by then, the Legislature had directed the Commission to prepare one instead.

the referendum was pending. (Code Civ. Proc., § 1085.) The Commission cross-complained, alleging Malibu was violating the Coastal Act, and seeking an injunction ordering the city to implement the LCP and process permits. In addition, a group of Malibu taxpayers and property owners sought, and was granted, leave to file a complaint-in-intervention. The interveners asked that the court set aside Malibu's decision to put the LCP referendum on the ballot as an improper exercise of local power.

The court denied Malibu's petition. At the same time, it granted the Commission's motion for a preliminary injunction, ordering Malibu to process permits. It also granted the interveners' petition, directing Malibu not to hold the referendum. Malibu appeals from the court's orders.

## STANDARD OF REVIEW

The parties agree the facts are undisputed and that this appeal presents pure questions of law. We therefore independently review the trial court's orders. (*Alliance for a Better Downtown Millbrae v. Wade* (2003) 108 Cal.App.4th 123, 129 [133 Cal.Rptr.2d 249].)

## DISCUSSION

*The Amendment to Coastal Act Is Not Unconstitutional "Special Legislation"*

Section 30166.5 directed the Commission to prepare a LCP for Malibu. The statute states:

"(a) On or before January 15, 2002, the commission shall submit to the City of Malibu an initial draft of the land use portion of the local coastal program for the City of Malibu portion of the coastal zone . . . . [¶] (b) On or before September 15, 2002, the commission shall, after public hearing and consultation with the City of Malibu, adopt a local coastal program for that area within the City of Malibu portion of the coastal zone . . . . The local coastal program for the area shall, after adoption by the commission, be deemed certified, and shall, for all purposes of this division, constitute the certified local coastal program for the area. Subsequent to the certification of the local coastal program, the City of Malibu shall immediately assume coastal development permitting authority . . . ."

Malibu contends the statute is unconstitutional "special legislation." Legislation is "special" when it applies only to particular members of a class, in contrast to "general" legislation, which applies uniformly to all members of a class. (See *Serve Yourself Gas etc. Assn. v. Brock* (1952) 39 Cal.2d 813,

820–821 [249 P.2d 545]; *Keenan v. S. F. Unified School Dist.* (1950) 34 Cal.2d 708, 713 [214 P.2d 382]; *White v. Church* (1986) 185 Cal.App.3d 627, 632 [231 Cal.Rptr. 565].) The California Constitution prohibits special legislation as follows: "A local or special statute is invalid in any case if a general statute can be made applicable." (Cal. Const., art. IV, § 16, subd. (b).)[3]

■    Whether a statute is general, or special, turns on the reasonableness of the classification used to pull out certain members from the "general" group for "special" treatment. Malibu acknowledges that the distinction between those who are subject to the legislation and those who are exempt need only be rational. (*Stout v. Democratic County Central Com.* (1952) 40 Cal.2d 91, 95–96 [251 P.2d 321]; *Hollman v. Warren* (1948) 32 Cal.2d 351, 357 [196 P.2d 562].) Noting a number of other coastal cities had also not implemented an LCP, Malibu contends the Legislature had no reasonable basis for singling it out. According to Malibu, the Legislature should have instead enacted a statute that directed the Commission to write LCP's for all coastal jurisdictions without such programs.

■    We find the Legislature acted properly. Its decision to focus on Malibu was rational because Malibu stood head and shoulders above other entities in the burden it placed on the Commission. From 1997 to 1999, Malibu property owners generated slightly more applications than the City of Los Angeles <u>and</u> Los Angeles County *combined* (976 versus 968), vastly larger and more populous entities. Moreover, Malibu generated in order of magnitude more applications than other similarly-sized, if even slightly larger, coastal communities: Santa Monica, for example, generated 63 applications, Hermosa Beach 31, Redondo Beach 23, and Torrance 1. As the statute's legislative history explains, "[T]he Coastal Commission has been forced to act as the agency to approve or deny every development permit within Malibu, from minor projects like a new garage, to more controversial projects, like seawalls. [¶] . . . [¶] This bill is in response to the failure of the City of Malibu to prepare and adopt an LCP, despite years of requests to do so by local activists and by the Coastal Commission. Malibu's failure has placed the Commission in the untenable position of having to approve each small project in the Coastal Zone, a duty that would normally be the responsibility of the local jurisdiction."

---

[3] The Commission characterizes Malibu's theory as resting on equal protection principles, and correctly notes cities do not have standing to raise equal protection challenges to action by state government. (*Star-Kist Foods, Inc. v. County of Los Angeles* (1986) 42 Cal.3d 1, 6 [227 Cal.Rptr. 391, 719 P.2d 987].) Although the bar to special legislation shares some conceptual overlap with equal protection (see, e.g., *City of Los Angeles v. State of California* (1982) 138 Cal.App.3d 526, 533, fn. 2 [187 Cal.Rptr. 893]; see also *Sagaser v. McCarthy* (1986) 176 Cal.App.3d 288, 305 [221 Cal.Rptr. 746]), the two doctrines exist independently in the state Constitution.

■ Contrary to Malibu's contention, the Legislature was entitled to select Malibu from among cities that had not implemented an LCP because the state is entitled to solve a problem incrementally, starting with the worst offenders first. (*Sagaser v. McCarthy, supra,* 176 Cal.App.3d at p. 304 [" '[W]hen the legislative body proposes to address an area of concern in less than comprehensive fashion by "striking the evil where it is felt most" . . . , its decision as to where to "strike" [will be upheld if it has] a rational basis in light of the legislative objectives.' "], citing *Hays v. Wood* (1979) 25 Cal.3d 772, 791 [160 Cal.Rptr. 102, 603 P.2d 19].) In enacting legislation that affects only one city, "It is well settled that [the bar to special legislation] does not prohibit the Legislature from enacting statutes that are applicable solely to a particular county or local entity. . . . By its express terms, article IV, section 16 prohibits this type of legislation only if 'a general statute can be made applicable.' . . . In determining whether 'a general statute can be made applicable,' the issue is not whether the Legislature could conceivably enact a similar statute affecting every locality. . . . Rather, it is whether 'there is a rational relationship between the purpose of the enactment . . . and the singling out of [a single] . . . county affected by the statute.' . . . The Legislature's determination that this rational relationship exists is entitled to great weight and will not be reversed unless the determination is arbitrary and without any conceivable factual or legal basis." (*White v. State of California* (2001) 88 Cal.App.4th 298, 305 [105 Cal.Rptr.2d 714], citations omitted.)

In a different, but related, contention, Malibu notes that land use regulation is ordinarily within the domain of the local authority's police power. Malibu further contends that only general, not special, legislation may preempt that power. (Cal. Const., art. XI, § 7 ["A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws"].)[4] Thus, according to Malibu, section 30166.5 cannot preempt Malibu's right to enact its own LCP.

■ Malibu's contention is unavailing because the bar to state preemption of local control of land use applies only to purely local concerns. As *Yost v. Thomas* (1984) 36 Cal.3d 561 [205 Cal.Rptr. 801, 685 P.2d 1152] (*Yost*), explains, it is "[un]disputed that in matters of general statewide concern the state may preempt local regulation . . . ." (*Id.* at p. 571.) Here, the LCP embraces matters of statewide concern as it involves the California coast, one of the state's most important environmental and economic resources. (See § 30001 et seq.) Protecting the coast requires comprehensive management

---

[4] The Commission argues Malibu did not cite article XI, section 7 of the California Constitution below, thus waiving the assertion. We disagree, as Malibu did cite it. But even if Malibu had not made the argument below, we exercise our discretion to consider an issue when the facts are undisputed. (*Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316 [88 Cal.Rptr.2d 758].)

and oversight, for threats to it do not respect municipal boundaries. There is "no doubt that the Coastal Act is an attempt to deal with coastal land use on a statewide basis." (*Yost, supra,* at p. 571.)

Our Supreme Court discussed the need for comprehensive land use planning under similar circumstances around Lake Tahoe. Noting that air and water pollution and wildlife preservation cannot be confined to one side or the other of the California-Nevada border, the Supreme Court said, "The water that the [interstate] Agency is to purify cannot be confined within one county or state; it circulates freely throughout Lake Tahoe. The air which the Agency must preserve from pollution knows no political boundaries. The wildlife which the Agency should protect ranges freely from one local jurisdiction to another. . . . Only an agency transcending local boundaries can devise, adopt and put into operation solutions for the problems besetting the region as a whole." (*People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480, 493–494 [96 Cal.Rptr. 553, 487 P.2d 1193].) Those principles apply with equal force to our coast.

Finally, Malibu contends section 30166.5 delegates legislative power to the Commission. According to Malibu, that delegation is illegal because the Commission is an administrative agency that may not exercise unfettered legislative power; instead, according to Malibu, the Commission may act only within strict guidelines established by the Legislature.[5] (See, e.g., *People v. Wright* (1982) 30 Cal.3d 705, 712 [180 Cal.Rptr. 196, 639 P.2d 267] (*Wright*) ["An unconstitutional delegation of legislative power occurs when the Legislature confers upon an administrative agency unrestricted authority to make fundamental policy decisions"].)

We find Malibu's contention unpersuasive because the Coastal Act provides sufficient guidance to the Commission. As the *Wright* court explained, "The doctrine prohibiting delegations of legislative power does not invalidate reasonable grants of power to an administrative agency, when suitable safeguards are established to guide the power's use and to protect against misuse. [Citations.] The Legislature must make the fundamental policy determinations, but after declaring the legislative goals and establishing a yardstick guiding the administrator, it may authorize the administrator to adopt rules and regulations to promote the purposes of the legislation and to

---

[5] Amicus curiae for Californians for Local Coastal Planning takes a slightly different tack. It argues the Commission violates the separation of powers because it exercises both legislative and judicial powers, yet belongs to the executive branch. Californians for Local Coastal Planning do not, however, develop the contention. In any case, the constitutional viability of administrative agencies that are nominally part of the executive branch, but exercise legislative and judicial powers, is well established. (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 142–144 [93 Cal.Rptr. 234, 481 P.2d 242].)

carry it into effect. [Citations.] Moreover, standards for administrative application of a statute need not be expressly set forth; they may be implied by the statutory purpose." (*Wright, supra,* 30 Cal.3d at pp. 712–713.)

The Coastal Act, and in particular chapter 3 of the act, establishes the requisite policies running the gamut of coastal matters, leaving to the Commission's expertise the leeway to design rules that implement those policies. The Supreme Court observed, "The Coastal Act . . . was enacted by the Legislature as a comprehensive scheme to govern land use planning for the entire coastal zone of California. . . . [¶] . . . [¶] . . . There are specific policies on public access to the sea and shorelines (§§ 30210–30214); recreational use (§§ 30220–30224); protection of the marine environment (§§ 30230–30236); protection of land resources (§ 30240 [environmentally sensitive habitats]; § 30241 [agricultural land]; § 30243 [timberlands]; § 30244 [archaeological resources]); development (§§ 30250–30255); and industrial development (§§30260–30264)." (*Yost, supra,* 36 Cal.3d at p. 565–566; see also *CEEED v. California Coastal Zone Conservation Com.* (1974) 43 Cal.App.3d 306, 327 [118 Cal.Rptr. 315] ["The fact that the [predecessor to the Coastal Commission was] required to weigh complex factors in determining whether a development will have a substantial adverse environmental or ecological effect does not, as plaintiffs charge, mean that unbridled discretion has been conferred on it. A statute empowering an administrative agency to exercise a judgment of a high order in implementing legislative policy does not confer unrestricted powers"].)

*The LCP Is Not Subject to Referendum*

The parties agree the LCP would be subject to a referendum if Malibu had drafted it. (See, e.g., *DeVita v. County of Napa* (1995) 9 Cal.4th 763, 780–782 [38 Cal.Rptr.2d 699, 889 P.2d 1019] [local voters can amend local general land use plan by initiative]; *Yost, supra,* 36 Cal.3d at p. 564 [local coastal plan adopted by city council not immune from referendum].) They disagree, however, on whether Malibu's local voters can put the *Commission's* LCP to a referendum. Malibu argues the LCP enacts laws local to Malibu (even if they are part of a statewide scheme) to which the fundamental right of referendum applies, regardless of who wrote it. The Commission argues, in contrast, that the Legislature may withdraw the right of referendum and did so here. (*Id.* at pp. 570–571 [state may withdraw right to referendum].) We conclude the Commission has the better argument.

The state may show its intent to withdraw a local community's right of referendum in at least one of two ways. As *Empire Waste Management v. Town of Windsor* (1998) 67 Cal.App.4th 714 [79 Cal.Rptr.2d 262], explained, "[T]here are two instances in which the power of referendum will be found to

have been withdrawn: first, when there is a 'definite indication' by the Legislature that it intends to preempt the discretion of a local legislative body to legislate; second, when the Legislature rather than preempt local legislative action has instead sought to delegate legislative power so exclusively to a local governing body as to indicate its intent to preclude the citizens' otherwise coextensive right of referendum." (*Id.* at p. 718; see also *DeVita v. County of Napa, supra,* 9 Cal.4th at p. 780.) Both circumstances exist here.

■ First, section 30166.5 intended the LCP to take immediate effect ("the City of Malibu shall immediately assume coastal development permitting authority"). Permitting no time for a referendum is evidence no referendum was to be allowed. (*Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 777 [35 Cal.Rptr.2d 814, 884 P.2d 645] [Legislature traditionally reveals intent to abrogate county electors' right of referendum by directing legislation to go into effect immediately, rather than by expressly stating that the right of referendum does not apply]; *Midway Orchards v. County of Butte* (1990) 220 Cal.App.3d 765, 779–782 [269 Cal.Rptr. 796] [suggests that express statement that legislation take effect immediately abrogates right to referendum].)

Second, the statute assigned the power to enact the LCP specifically to the Commission. (See *Committee of Seven Thousand v. Superior Court* (1988) 45 Cal.3d 491, 501, 504–505 [247 Cal.Rptr. 362, 754 P.2d 708] [vesting power over statewide concern with a specific body (instead of an unspecified legislative body) means abrogation of the right of referendum].) As our Supreme Court explained in *DeVita v. County of Napa, supra,* 9 Cal.4th 763, "[T]he local electorate's right to . . . referendum . . . is generally co-extensive with the legislative power of the local governing body. [¶] . . . Accordingly, we have concluded that the initiative and referendum power could not be used in areas in which the local legislative body's discretion was largely preempted by statutory mandate." (*Id.* at pp. 775–776.)

In addition to case law giving the Commission the upper hand over Malibu, public policy compels such a result. Good governance cannot permit local voters to override a state decision with a local referendum. For example, in *Board of Education v. Superior Court* (1979) 93 Cal.App.3d 578 [155 Cal.Rptr. 839], the court held that local school boards could not put decisions of the State Board of Education to a referendum. The court stated, "It is firmly held that the acts and resolutions of administrative agencies of the state are not subject to referendum by local electors." (*Id.* at p. 582) Malibu argues the *Board of Education* court limited its holding to administrative, as opposed to legislative, decisions, but whether legislative or administrative (see *City of Dublin v. County of Alameda* (1993) 14 Cal.App.4th 264, 279 [17 Cal.Rptr.2d 845] [noting abolition of distinction between administrative and legislative

acts for referenda]), to permit local voters to overturn state enactments would upend our governmental structure and invite chaos.

The voters of Malibu are not without recourse, however, to correct their disenfranchisement over the LCP; but those remedies lie in the political, not judicial, arena. The voters lost their right because their city leaders did not enact their own LCP. We are aware of nothing, however, preventing the city leaders from changing course. Malibu can petition the Commission to amend the LCP more to Malibu's liking.[6] We suppose Malibu can even lobby the Legislature to regain the power to draft a new LCP, and with it the attendant right of referendum. But, as we note, such remedies are political, not judicial, and thus beyond our purview.

## DISPOSITION

The orders are affirmed. Each side to bear its own costs on appeal.

Boland, J., and Flier, J., concurred.

Appellant's petition for review by the Supreme Cort was denied December 1, 2004.

---

[6] During oral argument, counsel for the Commission assured this court that the Commission would consider any amendments proposed by Malibu with the same respect and consideration due any California coastal city.