[No. B170644. Second Dist., Div. Seven. July 25, 2005.]

UNION OF AMERICAN PHYSICIANS AND DENTISTS, Plaintiff and Appellant, v.
LOS ANGELES COUNTY EMPLOYEE RELATIONS COMMISSION et al.,
Defendants and Respondents.

## COUNSEL

Lawrence Rosenzweig for Plaintiff and Appellant.

Liebert Cassidy Whitmore, Daniel C. Cassidy and Steven M. Berliner for Defendants and Respondents.

## OPINION

**JOHNSON, J.**—By enacting Government Code section 3504.5, subdivision (c),[1] we conclude the Legislature retroactively removed a county government's legal authority to unilaterally deny unionized employees the same health benefit programs as it provides unrepresented employees.

During negotiations with a county physician's union, Los Angeles County adhered to a firm policy enforcing a county ordinance providing only unrepresented employees could participate in two superior health benefit programs—Flex and Megaflex. When negotiations concluded without any agreement on this issue, the county unilaterally removed unionized physicians who were participating in the Flex and Megaflex programs and denied other unionized physicians admission to those programs. The Legislature then passed section 3504.5(c) which prohibits local authorities from providing different health benefits to unionized employees than nonunionized employees unless the union agrees. By its terms this prohibition also is retroactive to a date prior to the date on which Los Angeles County terminated the unionized physicians from participation in the Flex and Megaflex programs available to unrepresented employees. Accordingly, we reverse and order reinstatement of benefits removed or denied unionized physicians retroactive to the date Los Angeles County terminated those benefits.

### FACTS AND PROCEEDINGS BELOW

Appellant, Union of American Physicians and Dentists (Union), appeals from an adverse judgment suffered in its petition for administrative writ of mandate under Code of Civil Procedure section 1094.5. The judgment was entered on September 29, 2003, in favor of respondents Los Angeles County Employee Relations Commission, Los Angeles County Chief Administrative Office, and Los Angeles County Department of Health Services. Unless context otherwise dictates, respondents will be referred to herein in the aggregate as County.

---

[1] Hereafter section 3504.5(c). All statutory references are to the Government Code unless otherwise indicated.

The dispute has its inception over benefits contained in what is commonly known as the Flex and Megaflex plans for nonrepresented classes of employees of County. Union maintains that following union certification, County unlawfully relegated unionized employees to a plan commonly known as Choices in violation of their collective bargaining rights. Two charges were filed by Union with the Los Angeles County Employee Relations Commission (Commission) which resulted in an adverse decision against Union as more fully set forth in this opinion. We find the trial court erred in denying relief as to one charge but affirm its denial of relief as to the other charge.

*Physicians vote to be represented by Union.*

Union is an employee organization as defined in section 3501, subdivision (a). No issue is presented in this appeal contesting the right of Union to represent County employees. Nor is there an issue presented which calls into question the credentials of Union under section 3501, subdivision (a). In 1999, the physicians employed by County in various hospitals and clinics throughout Los Angeles County elected Union to represent them with respect to wages, hours and working conditions, thus becoming a recognized employee organization under section 3501, subdivision (b).

*Consequences of Union representation of physicians.*

During the union election campaign, County representatives made it known to physicans that one of the consequences that could result from a vote to be represented by Union could be the loss of certain benefits, i.e., ineligibility for inclusion in the Flex and Megaflex benefit plans offered by County for nonrepresented employees. County was of the opinion the ordinance pertaining to flexible benefit plans prohibited represented employees of the County from receiving Flex and Megaflex benefits.

*Collective bargaining negotiations.*

Following certification of Union as the exclusive representative of the County's physicians, collective bargaining negotiations began in November of 1999. The bargaining sessions between the chief negotiator for the County and the Union representative failed to resolve the core issue of whether the physicians would be allowed to participate in Flex and Megaflex plan benefits, with the County taking the position the represented physicians were only eligible for the Choices plan, which was being offered for new employees of County and the plan which County insisted represented physicians receive.

The parties never reached an agreement on the core benefits issue. Lack of agreement on the benefits issue is to be contrasted with agreement on approximately 30 other issues. During the negotiations, Union was unable to divert County from its stated firm and consistent policy to provide represented and nonrepresented employees different benefit packages. The chief reason given by County to substantiate its policy was that Megaflex is a tool intended for recruiting and retaining professional employees such as physicians, attorneys, management staff and other highly skilled individuals.

The impasse on the benefits issue led to a factfinding hearing conducted by Michael Prihar, who issued a nonbinding report concluding it was unreasonable for County to remove unionized physicians from the Flex and Megaflex programs; no cost savings would inure to County; and such removal would be counterproductive to the County's goals of retaining and recruiting qualified professionals.

County rejected the fact finder's report and reasserted its position: ". . . it had been the firm and consistent County policy from the outset that represented and nonrepresented employees receive different benefit packages." Union countered, to no avail, pointing out physicians were the only County employees to ever lose their Flex and Megaflex benefits; physicians are the highest compensated class of County employees; and the resulting detriment to each class member would be approximately $20,000 per year when considering Megaflex benefits are based upon the amount of salary received and are pensionable.

Fixed in its stated policy, and in the absence of agreement on the benefits issues, County implemented the change from Flex and Megaflex benefits in August 2001, to become effective as an actual change in benefits in January of 2002.

*Decertification attempts by physicians to save their benefits.*

As a result of the impending loss of Flex and Megaflex benefits, in October 2001, a small segment (six in number) of the doctors launched a decertification drive seeking to become nonrepresented employees, thus saving their Flex and Megaflex benefits. The decertification attempt had its inception in an August 2001 letter of one Dr. Lionel Cone, a physician supervisor in the bargaining unit, soliciting physicians to decertify the Union as the representative of the physicians' bargaining unit. Upon being apprised of Dr. Cone's letter, County management instructed Dr. Cone to remain neutral with respect to decertification and to refrain from sending any more letters regarding decertification.

*Commission hearing on Union charges.*

Union filed two charges with the Commission, which were assigned case Nos. 23.17 and 23.19. The Commission consolidated the charges for one hearing before Hearing Officer Fredric Horowitz. Following the hearing a decision was issued on August 22, 2002, in favor of County on both charges. The decision on the charges is summarized in relevant part as follows:

*Case No. 23.17.*

The essence of Union's charge against County in case No. 23.17 is to the effect the County violated Los Angeles County Employee Relations Ordinance (ERO), sections 12(a)(1) and (3) by failing to bargain in good faith over the benefits in issue. More specifically, Union states the illegality of County's position in the following terms: "The bargaining position of the County that eligibility for benefit plans is conditioned solely on the represented or non-represented status of its employees is a violation of its duty to bargain in good faith with UAPD over benefits."

County's position was that it had bargained in good faith and as proof thereof had sought the advice of county counsel in an effort to determine whether a County union had the right to negotiate coverage for its members under the County of Los Angeles flexible benefit plan. In order to orient the County during the negotiations, Supervisor Zev Yaroslavsky communicated with county counsel and asked the following question:

"Can a County union negotiate coverage for its members under the County of Los Angeles Flexible Benefit Plan [RX 18]?"

On March 22, 2000, county counsel replied as follows:

"We believe that coverage for union members under the Flexible Benefit Plan can be negotiated, and the Board of Supervisors may designate such employees as eligible for coverage.

"The County's Flexible Benefit Plan consists of two different cafeteria benefit plans commonly referred to as Flex and Megaflex, which also have non-pensionable versions. It has been County policy since the creation of these plans to offer them only to unrepresented County employees.

"By contrast, the County's represented employees receive benefits that are periodically negotiated with the employee unions, and are set out in the Fringe Benefits Memoranda of Understanding between the County and SEIU Local 660, and between the County and The Coalition of County Unions. Specific cafeteria benefit plans have been negotiated for represented employees with those two large groups of unions.

"The County's policy of offering coverage under the Flexible Benefit Plan to unrepresented employees is codified in the Plan itself. For example, for the Flex Plan Los Angeles County Code sections 5.27.020 K and L. Definitions, provide as follows:

"K. 'Eligible Employee' means a full-time permanent employee of the County who was not in an Excluded Bargaining Unit and who is designated by the Board as eligible to participate in the Plan . . . .

"L. 'Excluded Bargaining Unit' means an employee representation unit, unless the representative of such unit and the County agree that the employees in such unit shall be covered hereunder.

"The provisions of the MegaFlex Plan, and of the non-pensionable Flex and Megaflex Plans contain identical in qualifying provisions.

"In summary, to date there have been two requirements for employee coverage under the Flexible Benefit Plan: 1) that the employees be unrepresented; and two) that the employees' classification be designated by the Board as eligible. However, the Plan specifically provides that the County may negotiate coverage under the Plan with employee unions. If that occurs, designation by the Board would make those represented employees eligible for coverage under the Flexible Benefit Plan."

The opinion of the hearing officer in holding the Union charge under case No. 23.17 should be dismissed is verbatim as follows:

"§§ 12(a)(1) and (3) of the ERO provide it shall be an unfair employee relations practice for the County to interfere with, restrain, or coerce employees in the exercise of their rights under . . . the ordinance or to refuse to negotiate with the recognized union on negotiable matters. UAPD contends the County has unlawfully conditioned eligibility for its benefit plans solely on the represented or non-represented status of its employees. This action, according to the Union, violated the County's duty to bargain in good faith under the Meyers-Milias-Brown Act as well as the ERO. For its part, the County denies having refused to bargain over the eligibility of physicians for MegaFlex/Flex and Choices or having bargained in bad faith over the issue.

A review of all the evidence and argument in this proceeding supports the position of the County. It follows the Charge should be dismissed.

"In *Placentia Fire Fighters, Local 2147 v. City of Placentia,* 57 Cal.App.3d 9, 126 [129 Cal.Rptr. 126] (1976), the court said, 'good faith is a subjective attitude and requires a genuine desire to reach an agreement.' The totality of the bargaining history must be considered to determine if a serious attempt to resolve differences and reach a common ground is made. Id. The duty of good faith, however, does not require a party to make any particular concessions or yield to any specific demand. See, e.g., *United States Gypsum Co. v. NLRB,* 484 F.2d 108 (CA 8, 1973), denying enforcement to 200 N.L.R.B. 1098 (1972). Absent evidence of dilatory tactics or an attempt to undermine efforts to reach an overall agreement, lawful hard bargaining rather than an unlawful unyielding of position may be inferred from the totality of the circumstances. See Hardin, *The Developing Labor Law* (3d Ed. 1992) at 624 and the cases cited therein.

"The evidence in this proceeding demonstrates both the County and the Union bargained in earnest to reach an agreement. The parties conducted 18 bargaining sessions from November 15, 1999 through August 23, 2000 followed by six sessions in mediation from September 13, 2000 through November 1, 2000 [RX 29]. The record reflects tentative agreements ('TA') were reached steadily throughout that process. Of the 37 Articles in the newly proposed MOU, 30 Articles were TA'd prior to the hearings in Fact Finding and only five Articles remained open thereafter [RX]. There is no evidence of any delays or dilatory tactics by the County in the course of these negotiations other than the allegation of UAPD of unlawful intransigence by management on the issue of benefits.

"There is no dispute the County remained steadfast in its proposal for the physicians now represented by UAPD to be moved to Choices. According to UAPD Regional Director Bader, the Union made alternate proposals in order to reach a compromise, including grandfathering existing employees in MegaFlex/Flex, retain MegaFlex/Flex with minor changes, or permit the County to 'buy out' the value of MegaFlex/Flex with other pay and benefits. Management rejected all these proposals, insisting that eligibility for MegaFlex/Flex would no longer be possible for physicians once they were in a bargaining unit. From this record, it is clear the County exhibited no flexibility in its proposal to replace MegaFlex/Flex with Choices for the members of this bargaining unit.

"The Union has failed, however, to establish the intransigence by management on this issue violated the ERO or state law. Contrary to the claim of the Union, the provisions in County Code §§ 5.27.020 K. and L. do not prevent

the County from extending eligibility for MegaFlex/Flex to represented employees. Paragraph L. specifically provides represented employees may be deemed eligible should 'the representative of such unit and the County agree that the employees in such unit shall be covered hereunder' [JX 1]. On March 22, 2000, County Counsel issued an opinion letter which concluded 'that coverage for union members under the Flexible Benefit Plan can be negotiated, and the Board of Supervisors may designate such employees as eligible for coverage' [RX 18]. There is no evidence in this proceeding the County's negotiators at the bargaining table asserted that eligibility for MegaFlex/Flex was not negotiable. Because the County was not precluded from extending coverage under MegaFlex/Flex to the newly represented physicians, there is no basis for finding County Code §§ 5.27.020 K. and L. violated the ERO or Government Code §§ 3502, 3506 and 3507 by making an impermissible distinction based on represented status of employees.

"It is recognized the County's stated reasons for insisting on the removal of represented employees from MegaFlex/Flex, principally ease of administration and avoiding fragmentation of the risk pool, were not deemed persuasive by Fact Finder Prihar. Consistent with the experience related by several physicians in this proceeding, Fact Finder Prihar found the conversion to Choices, 'without a doubt, would decrease in actual take home for a lot of the doctors who are now participating in MegaFlex' [UX 14 at p. 4]. Fact Finder Prihar said additional reasons for allowing physicians to keep MegaFlex/Flex were found in CAO Hufford's 1993 explanation of the benefits such as increased productivity, lower costs, and improved employee satisfaction, as well as an important and powerful tool to recruit and retain physicians [UX 9 and 14 at p. 4]. Thus, Fact Finder Prihar recommended the adoption of this benefit package in the new MOU [UX 14].

"Yet the mere fact UAPD, the physicians affected, and Fact Finder did not agree with the wisdom or necessity of management's abject refusal to extend eligibility for MegaFlex/Flex to represented employees does not automatically render the position of the County to be illegal. As discussed above, there is no requirement in the ERO or Meyers-Milias-Brown for a party to be forced to make a concession or yield to any particular demand so long as the overall course of bargaining is conducted in good faith. In this instance, the Union has failed to show the County engaged in any dilatory tactics or unreasonable refusal to reach an overall agreement on the initial MOU other than not accede to the proposals of UAPD on the issue of benefits. For this reason, it cannot be found the County's rigid, inflexible approach to the eligibility of the physicians for benefit plans at the bargaining table was unlawful or in bad faith. The remedy for the perceived inequity in benefit plans thus lies squarely in the process of collective bargaining. It follows UFC 23.17 should be dismissed."

*Case No. 23.19.*

Union's charge in case No. 23.19 alleges "By circulating the enclosed letter [from Dr. Cone] and decertification petition [2] among their subordinates using county stationary, [*sic*] on county time and through county mail, and encouraging them to sign it, Los Angeles County management has violated section 12 a (1) and (3) of the Employee Relations Ordinance, and interfered with the efforts of the UAPD to represent physicians in the bargaining unit 324. Further, it constitutes another in a series of unfair labor practices and violations of the ordinance (See UFC 23.17)."

County maintains the letter of Dr. Cone was facially neutral and even if not had no adverse impact on the bargaining unit and urged that the charge be dismissed.

---

[2] Dr. Cone's letter and petition were worded as follows:

"ValleyCare — Health Centers Administration
"County of Los Angeles — 7515 Van Nuys Boulevard, Van Nuys, CA
"Department of Health Services — 91405 Telephone 818-947-4026/FAX 989-8850

"August 15, 2001

"To: All Pediatric Clinicians
"From: Lionel A. Cone, M.D.
"SUBJECT: Petition to Hold Another Vote on Whether to Decide if Physicians should Continue to be Represented by the Union of American Physicians and Dentists (UAPD)

"Please review the attached petition. If you agree that physicians should no longer be represented by the UADP then please sign the attached form and forward to the next person.

"When everyone has had an opportunity to review/sign this form then please send it to Maureen Sims, M.D. Department of Pediatrics, Olive View Medical Center.

"I am a physician employed by the County of Los Angeles and do not want to continue to be represented by the physicians union (Union of American Physicians and Dentists). I request that another election be held to determine whether physicians should be represented by the union.

| "Signature | Printed Name | Employee Number | Date" |
|---|---|---|---|
| | | | |
| | | | |

In holding that the charges against County in case No. 23.19 should be dismissed, the verbatim holding of the hearing officer was as follows:

"§ 12(a)(1) of the ERO provides it shall be an unfair employee relations practice for the County to interfere with, restrain, or coerce employees in the exercise of their rights under the . . . ordinance. On August 15, 2001, Chief Physician Cone sent five or six subordinate pediatricians a memo with a petition seeking a vote to determine whether UAPD should continue as the representative of the bargaining unit [UX 4]. Contrary to the claim of the County, this memo can reasonably be viewed as direct interference by management with the right of employees to choose their representative.

"On the other hand, there is no evidence in this proceeding of any adverse impact on the physicians as a result of this memo. Dr. Cone has been instructed by Olive View Medical Director Loos to remain neutral in matters concerning UAPD. When Dr. Loos learned of the memo, he instructed Dr. Cone to refrain from taking any further actions in this regard. There were approximately 800 members of this bargaining unit, and none of the other doctors in the bargaining unit viewed the memo from Dr. Cone. Indeed, there was no showing the views or votes of the five or six pediatricians who received the memo were influenced as a result. Under these circumstances, the claim by the County the memo did not cause any harm and any violation was thereby *de minimis* is established by the evidence. In light of the prompt corrective action taken by Dr. Loos and lack of evidence of any adverse impact on the doctor's exercise of their rights, a violation of the ERO has not been established. UFC 23.19 should therefore be dismissed."

On December 16, 2002, the Commission affirmed the hearing officer's decision.

Union thereafter filed a request for reconsideration which urged the Commission to reconsider its decision because the Legislature had enacted section 3504.5(c), which retroactively prohibited the County from denying represented employees, including Union's members, participation in a health benefit plan available to nonrepresented County employees. In its response, County argued against reconsideration urging section 3504.5(c) did not change the law. Instead "such conduct has always been unlawful under the MMBA. An employer shall not discriminate against employees because they have joined an employee organization . . . . [b]ecause the County could have offered Megaflex to the represented physicians in negotiations, the County did not violate MMBA." Agreeing with County, the Commission orally denied Union's reconsideration request.

Following the denial of Union's request for reconsideration, Union sought judicial review through a petition for writ administrative mandate

under Code of Civil Procedure section 1094.5, which was denied on September 11, 2003, followed by judgment entered on September 29, 2003.

Union filed a timely notice of appeal on October 3, 2003.

## DISCUSSION

### I. *STANDARD OF REVIEW.*

The standard of review on appeal is not disputed.

In reviewing a judgment arising from a mandamus proceeding pursuant to Code of Civil Procedure section 1094.5 that does not involve fundamental vested rights, such as here, the Court of Appeal applies the substantial evidence test.[3] Under the substantial evidence test, an appellate court must presume that the administrative findings and actions were supported by substantial evidence.[4] On the other hand, where as here, the issue involves statutory interpretation, the appellate court exercises independent judgment and reviews that matter de novo.[5]

### II. *BY ENACTING GOVERNMENT CODE SECTION 3504.5(C) AND MAKING IT RETROACTIVE THE LEGISLATURE VOIDED THE COUNTY'S IMPOSITION OF A POLICY REMOVING UNION PHYSICIANS FROM THE FLEX AND MEGAFLEX PROGRAMS AVAILABLE TO NONUNION MEMBERS.*

In its petition for reconsideration of the Commission's decision, Union argued the amendment of section 3504.5 to add the language contained in subdivision (c), made retroactive to July 1, 2001, dictated a decision in its favor. On the other hand, County maintains the amendment is merely declarative of existing law and did not affect its ability to insist Union members would lose their Flex and Megaflex benefits. Section 3504.5(c) provides a public agency the size of Los Angeles County "shall not discriminate against employees *by removing or disqualifying them from a health benefit plan . . . on the basis that the employees have selected . . . a recognized employee organization. Nothing . . . prohibit(s) . . .* a public agency and a recognized employee organization *from agreeing* to health benefit plan enrollment criteria or eligibility limitations." (Italics added.)

---

[3] *NBS Imaging Systems, Inc. v. State Board of Control* (1997) 60 Cal.App.4th 328, 335 [70 Cal.Rptr.2d 237].

[4] *Desmond v. County of Contra Costa* (1993) 21 Cal.App.4th 330, 335 [25 Cal.Rptr.2d 842].

[5] *International Federation of Professional & Technical Engineers v. City and County of San Francisco* (1999) 76 Cal.App.4th 213, 224 [90 Cal.Rptr.2d 186].

As stated by County, the MMBA[6] has always prevented an employer from discriminating against employees based on their decision to organize, even before this recent legislation. Thus, County claims section 3504.5(c) merely reflects what existing law already provided and did not erect an additional bar to its ability to deny physicians who joined the Union from continuing in health programs only available to unrepresented physicians.

We do not find County's position persuasive.

To begin with, assume for sake of argument County is correct and the provisions of section 3504.5 indeed were part of existing law at the time County was insisting on providing better health care plans for nonunion physicians than for those who elected to join a union. For reasons explained in more detail below, that policy is inconsistent with both the language and intent of section 3504.5(c). Assuming this new enactment was merely declarative of controlling law, it would mean County was violating both the letter and spirit of the law as it existed at the very time it was imposing this policy during negotiations with the Union.

Having said that, however, it appears more probable section 3504.5(c) represented a new limitation on County's behavior, one the Legislature made retroactive to prohibit County from doing what it did when it did it. Indeed the fact the Legislature chose to impose this specific prohibition retroactively is powerful evidence the lawmakers considered it necessary to introduce this new limitation on relations between County and its employee unions.

The legislative history of section 3504.5(c) demonstrates the Legislature's clear intent—whether it is construed as merely a clarification of existing law or as adding a new limitation on local governments when dealing with union members. Indeed although this provision was enacted in 2002 the Legislature made it retroactive to 2001 for the express purpose of overturning this particular denial of Flex and Megaflex benefits to these particular Union members as well as future Los Angeles County employees who are or might become unionized.

On June 18, 2002, Assembly Bill No. 2006 (2001–2002 Reg. Sess.), a bill initially introduced to alter other sections of the Government Code, was amended in the Senate to add subdivision (c) to section 3504.5. The language of that proposed new subdivision read as follows and remained unchanged throughout the legislative process:

---

[6] Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.).

*"SECTION 1. Section 3504.5 of the Government Code is amended to read: [¶] . . . [¶]*

(c) The governing body of a public agency with a population in excess of 4,000,000, [7] or the boards and commissions designated by the governing body of such a public agency shall not discriminate against employees by removing or disqualifying them from a health benefit plan, or otherwise restricting their ability to participate in a health benefit plan, on the basis that the employees have selected or supported a recognized employee organization. Nothing in this section shall be construed to prohibit the governing body of a public agency or the board or commission of a public agency and a

---

[7] The separate concurring opinion discusses an issue neither party raised—whether the limitation of section 3504.5(c) to counties with 4,000,000 or more citizens is constitutional. The opinion expresses a view this code section may represent "special legislation" in violation of the California Constitution, finding a very recent Oklahoma decision persuasive. We agree with our colleague this issue is not before our court but do not share the same doubts about the constitutionality of section 3504.5(c).

The Oklahoma case, *City of Enid v. Public Employees Relations Board* (Okla., July 5, 2005, No. 101,729) 2005 OK 55 [2005 Okla. Lexis 57], rests not on limitations like due process or equal protection common to most state constitutions, but on detailed provisions in the Oklahoma Constitution directed specifically at banning special legislation on certain topics, including several implicated in the offending statute. (2005 OK 55 [2005 Okla. Lexis at p. *11].) The California Constitution no longer contains any equivalent limitations since the repeal of article 1, § 11 and article IV, § 25 in 1966. Those sections were succeeded by a general provision, article IV, § 16, which has been held to be equivalent to an "equal protection" limitation. (*Whittaker v. Superior Court of Shasta County* (1968) 68 Cal.2d 357, 367 [66 Cal.Rptr. 710, 438 P.2d 358].)

As the concurring opinion recognizes, courts in this state have upheld the constitutionality of legislation affecting only certain sizes or classes of counties or cities (including Los Angeles County and the City of Los Angeles) against challenges they represented "special legislation" in violation of the latter constitutional provision. (See, e.g., *Board of Education of the City of Los Angeles et. al. v. Philip E. Watson* (1966) 63 Cal.2d 829 [48 Cal.Rptr. 481, 409 P.2d 481] [upholding constitutionality of tax procedures imposed only on Los Angeles County]; *Hutton v. Pasadena City Schools* (1968) 261 Cal.App.2d 586 [68 Cal.Rptr. 103] [upholds state statute not requiring all school districts to have merit pay system]; *Parking Authority of Sacramento v. Nicovitch* (1973) 32 Cal.App.3d 420, 426–427 [108 Cal.Rptr. 137] [state statute granting condemnees their moving expenses only in Los Angeles County is constitutional]; *City of Los Angeles v. City of Artesia* (1977) 73 Cal.App.3d 450, 455–457 [140 Cal.Rptr. 684] [state legislation reducing charges Los Angeles County but no other county can impose on cities which contract for sheriff to provide law enforcement services is constitutional]; *City of Los Angeles v. State of California* (1982) 138 Cal.App.3d 526, 533–535 [187 Cal.Rptr. 893] [state statute requiring only Los Angeles among charter cities to bring its zoning into conformance with its general plan is constitutional]; *City of Malibu v. California Coastal Commission* (2004) 121 Cal.App.4th 989, 993–996 [18 Cal.Rptr.3d 40] [state law singling out Malibu and empowering state Coastal Commission instead of city to prepare local coastal plan and without local referendum is constitutional since Malibu is worst offender and Legislature can enforce policies incrementally].)

recognized employee organization from agreeing to health benefit plan enrollment criteria or eligibility limitations.

SEC. 2 The amendments made by this act to Section 3504.5 of the Government Code shall be *retroactive to July 1, 2001.*" (§ 3504.5(c), as amended by Stats. 2002, ch. 1041, § 1, italics added.)

According to the Senate Rules Committee bill analysis, this proposed legislation was aimed directly at restoring health benefits to appellant's members as well as ensuring County did not deny to other represented employees health benefits that were available to unrepresented employees. The analysis first provided the background, explaining: "The Union of American Physicians and Dentists (UAPD), in 1999 completed a three-year organizing campaign to win rights for eight hundred physicians employed by Los Angeles County. As UAPD commenced bargaining with Los Angeles County, discussions, however, hit an impasse when the County proposed (and ultimately removed) the Flexible Benefit Plan from physicians and replaced it with an inferior plan. [¶] 'At a subsequent fact finding hearing, the County's proposal to remove the popular Megaflex benefit program (from physicians) was deemed harmful to physician recruitment and retention efforts. Although the arbitrator recommended that County officials not reduce physicians' labor benefits the County (as noted above) removed the Flexible Benefit Plan.' " (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2006 (2001–2002 Reg. Sess.) as amended June 18, 2002, p. 2.)

The analysis then summarized the arguments for and against the proposed subdivision:

"UAPD believes the bargaining 'behavior' of the county constitutes an unfair labor practice. UAPD is also concerned that the county may attempt to de-certify them, and [its] right to represent the physicians. This bill offers *a solution to the dilemma* in Los Angeles County. Physicians play a vital role in the Los Angeles County healthcare system. This *bill*, while clearly in the public interest, *presents a viable answer to UAPD winning a contract* in Los Angeles County.

". . . The County of Los Angeles states, 'This bill would *restrict the ability* of the Board of Supervisors to negotiate benefits with unions and *to provide different benefits to non-represented/management employees and represented employees.* It also *overrides a local ordinance* that specifies the types of benefits available to represented and to non-represented employees.' " (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2006, *supra*, p. 3, italics added.)

Thus, both appellant Union and respondent County viewed the proposed section as affecting the County's ability to remove or disqualify these particular union members from participation in the Flex and Megaflex health benefit programs. The Assembly and Senate members who voted for the bill—and the Governor who signed it—understood it offered "a solution to the dilemma" facing physicians who wanted to join the Union yet would have to give up their health benefits to do so. Moreover, they understood it to "present a viable answer to UAPD winning a contract." Furthermore, these legislators understood it would "override [the] local ordinance" that denies health benefits to represented employees which the county provides to unrepresented ones. With these understandings and this legislative intent, Assembly Bill No. 2006 passed the Senate on August 8, 2002, and the Assembly on August 19, 2002. The Governor signed it into law on September 28, 2002, and by its terms the prohibition was made retroactive to July 1, 2001.

Both in its now overridden ordinance and its announced "firm and consistent" policy, the county "removed" and "disqualified" employees from this countywide benefit plan if they "selected" an employee organization. Given the ordinance's clear provisions and the County's rigid policy, the remote possibility the County might agree to grant an exception during negotiations with the Union was illusory and, in any event, insufficient to comply with the spirit, and indeed the letter, of section 3504.5(c). In essence, the County's ordinance said "we'll discriminate against you by taking away this major health benefit if you unionize, unless we deign to give it back to you during negotiations with your union. But don't count on that because we have a 'firm and consistent' policy against making such an exception." Small wonder the County itself admitted in its argument to the Legislature that section 3504.5(c) *overrode* this ordinance.

The language of section 3504.5(c) and the legislative intent behind it set up the opposite presumption. The represented employees must have available the same health benefits package as unrepresented employees *unless* Union representatives voluntarily *agree* to different arrangements. So the County and the Union enter negotiations with the assumption the Union members will be treated the same as unrepresented employees as far as health benefits—not as the County ordinance and policy provided, with the assumption they will be treated differently. And moreover, they enter those negotiations with the understanding the Union members will be treated differently only if the Union agrees with that position.

In any event, in this instance the "recognized employee organization" *never* "agreed" the County could remove or disqualify the represented physicians from the Flex and Megaflex health benefit programs available to unrepresented physicians and other unrepresented employees. Instead, in August, 2001, the County unilaterally activated its rigid policy removing those represented physicians who already were participants in these benefit programs and disqualifying any other represented physicians from joining in the future. These changes were to be effective January 1, 2002.

■ Significantly, the County's August 2001 action came too late. As of July 1, 2001, it was illegal for the County to remove or disqualify represented employees, including and especially these 800 represented physicians, because as will be recalled the Legislature made the provisions of section 3504.5(c) retroactive to that earlier date. Under the express terms of that new subdivision, as of the time the County purported to act to remove and disqualify appellant Union's members from the Flex and Megaflex health programs, "[t]he governing body of [Los Angeles County] [and its] boards and commissions [were barred from] discriminat[ing] against employees by removing or disqualifying them from a health benefit plan, . . . on the basis that the employees have selected or supported a recognized employee organization."

The proceedings in the trial court and much of the briefing and argument in this appeal revolved around the issue whether the County was guilty of bad faith bargaining during its negotiations with the Union. This became largely a nonissue once section 3504.5(c) became effective and imposed a retroactive ban on the denial of health benefits to represented employees. Whether the County engaged in bad faith bargaining or good faith bargaining the negotiations led to an impasse on the health benefits issue. The County refused to promise it would allow physicians who joined the Union to remain in these two health benefit plans and indeed threatened to remove and disqualify them from such participation. But by the time the County got around to implementing its threat the Legislature had intervened—albeit retroactively—and made it illegal for it to do so.

In supplemental briefing,[8] County argues it did not violate section 3504.5(c) because it did not remove unionized physicians from the Flex and Megaflex programs immediately after they joined Union, but only after completing negotiations and the meet-and-confer process with Union. But nothing in

---

[8] Although section 3504.5(c) had been briefed and argued in general terms, we requested supplemental briefing from both parties focused precisely on the impact of section 3504.5(c) and its retroactive prohibition against treating unrepresented and represented employees differently with respect to health benefit plans.

section 3504.5(c) or its legislative history suggests delayed discrimination is permissible and only an immediate denial of benefits for union members would violate the statute. Nor does section 3504.5(c) or its legislative history suggest a county can impose such treatment on union members if it first goes through negotiations, mediations, meet-and-confer sessions, etc.

In its supplemental brief, County also urges removing unionized physicians from the Flex and Megaflex programs did not violate section 3504.5(c) because these were "cafeteria" programs not "health benefit" programs, in the sense they also offered participants benefits in addition to payment of health care costs. According to County's argument, this legislation only prohibits denial of health benefits to union members and not the type of benefit program the County took away from these unionized employees.

This argument does not survive scrutiny, however. The Flex and Megaflex programs are plans that provide health benefits, even though they may also offer other and additional benefits. When County removed them from the Flex and Megaflex programs, the unionized physicians were relegated to another health care plan, "Choices," in order to continue to enjoy health care coverage. Thus, Flex and Megaflex do qualify as "health benefit plans" within the meaning of section 3504.5(c).

If there were any lingering doubt whether the Legislature intended the term "health benefit plans" to embrace County's Flex and Megaflex programs, the legislative history removes all doubt. As described earlier, the analysis of the bill specifically refers to these particular Flex and Megaflex plans as ones at which this legislation was aimed.[9] Indeed the analysis describes the removal of these particular unionized physicians from these particular plans as a practice which enactment of section 3504.5(c) would prohibit.

■ In summary, we conclude the County ordinance (L.A. Co. Code § 5.27.020 K and L) and "firm policy" denying represented employees, including Union's members, participation in the Flex and Megaflex programs available to unrepresented employees violates the terms and intent of section 3504.5(c). If we assume County is right and this new code section was merely declarative of the law existing during its negotiations with Union, then County was adopting and insisting on an unlawful position during those negotiations. The claim the ordinance allowed for the possibility the County *might* permit unionized employees to participate in these health benefit plans

---

[9] See pages 399–400, *ante.*

was not enough to comply with section 3504.5(c). Unless Union *agreed,* assuming the terms of section 3504.5(c) expressed then existing law, County lacked the legal authority during those negotiations to deny represented employees the opportunity to participate in the Flex and Megaflex programs available to unrepresented employees. To insist on implementing an unlawful policy easily qualifies as bad faith bargaining.

In any event, for reasons explained *ante,* we find it unnecessary to even address whether the County bargained in bad faith. Under the more likely scenario, section 3504.5(c) represented a new specific limitation on County's permissible policies toward represented employees. By the time the bargaining process was over and the County had implemented its "firm policy," that policy was *illegal* under state law. The County was prohibited from doing what it did—disqualifying represented employees, including these particular represented physicians, from participation in health benefit programs available to unrepresented employees, including the Flex and Megaflex programs.

### III. *SUBSTANTIAL EVIDENCE SUPPORTS THE HOLDING OF THE TRIAL COURT IN CASE NO. 23.19.*

We find it unnecessary to review the trial court's finding the letter and petition of Dr. Cone did not constitute an unfair labor practice. It may be appropriate to observe the letter and the petition were ill advised as reflected in the subsequent admonitions his superiors issued to Dr. Cone. But we are convinced Dr. Cone's efforts were de minimus, as explained in Hearing Officer Horowitz's report. His letter and petition only went to a handful of other physicians and there was no evidence even these Union members were influenced by those communications. Furthermore, County took immediate corrective action in the form of a cease-and-desist instruction to Dr. Cone and further advice for him to remain "neutral" as to Union activities. Consequently, we conclude the trial court committed no error in denying Union's petition for writ of mandate in case No. 23.19.

### DISPOSITION

The order denying Union's petition for writ of administrative mandate as to case No. 23.17 is reversed and the cause remanded to the superior court with instructions it is to grant the administrative mandate and direct respondents to reinstate all those who are or were members of appellant's employee organization retroactive to July 1, 2001, or such later date as their participation may have been terminated or denied and to make them whole for the benefits which attend or would have attended full participation in the Flex

and Megaflex program they choose for the period they were denied such participation.[10] The trial court's denial of appellant's petition in case No. 23.19 is affirmed. Appellant to receive its costs on appeal.

Perluss, P. J., concurred.

**WOODS, J.,** Concurring.—I write separately to state although I concur in the majority opinion the enactment of subdivision (c) as an amendment to Government Code section 3504.5 in 2002 is new legislation as contended by the Union of American Physicians and Dentists, Los Angeles County's argument the enactment is merely expressive of existing law relegates the issue to a category that I refer to as a "close call."

Be that as it may, I perceive a more fundamental problem with Government Code section 3504.5, subdivision (c). The problem lies with the question whether Government Code section 3504.5, subdivision (c) is constitutional in the first instance. The constitutional problem that I perceive was never raised in the trial court, nor briefed in this court, nor addressed by counsel at the time of oral argument. In short, the issue is not before us and has no part to play in the final disposition of this matter as reflected in our filed opinion.

Nevertheless, the perceived constitutional issue lies dormant just below the surface and must await a future appeal where it is properly raised by counsel who deem the issue worthy of judicial resolution. Whether the phoenix will rise from its own ashes is yet to be manifested. The constitutional issue as I perceive it has its genesis in the fact that Government Code section 3504.5, subdivision (c) may constitute special legislation in violation of California constitutional law principles by confining the legislation to the governing body of a public agency with a population in excess of 4 million without a statement which demonstrates a showing of reasonable justification for the classification outweighing the constitutional imperative prohibiting such discrimination.

---

[10] This disposition is not meant to preclude County and Union, or County and any organization representing these employees from negotiating in the future about health benefits and arriving at arrangements regarding "enrollment criteria or eligibility limitations" to which *both parties agree.* This is consistent with the final sentence of section 3504.5(c): "Nothing in this section shall be construed to prohibit the governing body of a public agency or the board or commission of a public agency and a recognized employee organization from *agreeing* to health benefit plan enrollment criteria or eligibility limitations." (Italics added.)

Government Code section 3504.5, subdivision (c) provides: "The governing body of a public agency with a population in excess of 4,000,000, or the boards and commissions designated by the governing body of such a public agency shall not discriminate against employees by removing or disqualifying them from a health benefit plan, or otherwise restricting their ability to participate in a health benefit plan, on the basis that the employees have selected or supported a recognized employee organization. Nothing in this section shall be construed to prohibit the governing body of a public agency or the board or commission of a public agency and a recognized employee organization from agreeing to health benefit plan enrollment criteria or eligibility limitations."

The Supreme Court of California last addressed the issue in two well reasoned cases. The first case was in 1966 in a decision entitled *Board of Education v. Watson* (1966) 63 Cal.2d 829 [48 Cal.Rptr. 481, 409 P.2d 481]. The case was decided within the context of Education Code former section 20811 purportedly requiring the Assessor of Los Angeles County to furnish designated real property assessment information to certain governing boards of several public school districts in Los Angeles County to enhance the budgeting process of the schools. The assessor refused, contending that the statute was unconstitutional because it applied only to counties having a population in excess of 4 million, among other contentions not here relevant. The Supreme Court held the special legislation constitutional, stating at page 836 as follows: "*Although the issue is not free from doubt,* we resolve the conflict, as we must, in favor of finding that the Legislature adopted a valid act and that section 20811 is constitutional since there exists a rational basis for the statutory classification. The Legislature could have reasonably assumed that school districts containing a larger number of students warranted special consideration and that in a county with a population of over 4,000,000 persons, the districts have more students than in smaller counties. Figures issued by the State Department of Education bear out this assumption and demonstrate that individual school districts in Los Angeles County have, for the most part, larger numbers of students than do the districts in other counties. The chart in the appendix, based upon figures taken from the publication California Education (Vol. 2, No. 9, May 1965, p. 28), issued by the State Department of Education, indicates that in Los Angeles County approximately 75 percent of the school districts have 3,000 or more students, whereas the rate is 43 percent for the total of the other populous counties listed in the chart. [Fn. omitted.] Under these circumstances, the Legislature could have reasonably believed that the assistance of the assessor is more

necessary in Los Angeles because the planning of budgets for numerous large school districts is a more complex matter and the effects of a miscalculation more serious than would be the case in the other counties of the state, which contain fewer large and more small school districts." (*Board of Education v. Watson, supra*, 63 Cal.2d at p. 836, italics added.)

The second case was decided by our high court in 1968 in *Whittaker v. Superior Court* (1968) 68 Cal.2d 357 [66 Cal.Rptr. 710, 438 P.2d 358] in the context of whether multiple-judge appellate departments of the superior court pursuant to section 77 of the Code of Civil Procedure could pass constitutional muster by being applicable only in those counties having a municipal court and whether Code of Civil Procedure section 77 bore a substantial reasonable relationship to a legitimate legislative objective. The court stated on page 370 as follows: "The principle which we derive from these cases, and which we apply to the instant case, is this: Legislative classification as to treatment and procedure within a state judicial system according to factors such as geographical area, population, or other relevant considerations, does not deny equal protection of the laws unless such classification is shown to be palpably arbitrary and without a sound basis in reason. [¶] We have concluded that the classification here in question is based upon sound reasons cognizable by the Legislature, and that it therefore does not deny to petitioners the equal protection of the laws." (68 Cal.2d at p. 370.) I find the classification contained in Government Code section 3504.5, subdivision (c) to be constitutionally suspect for containing a classification which is arguably "palpably arbitrary and without a sound basis in reason."

An illustration of the opposite end of the constitutional spectrum is found in the recent decision of the Supreme Court of one of our sister states. In *City of Enid v. Public Employees Relations Bd.* (Okla. July 5, 2005, No. 101,729) 2005 OK 55 [2005 Okla. Lexis 57], the Oklahoma Supreme Court affirmed the summary judgment order of the district court wherein the district court determined that the statutory classification of municipalities with populations greater than 35,000 for purposes of collective bargaining is arbitrary and discriminatory. The district court had ruled that the Oklahoma Municipal Employee Collective Bargaining Act is a special law contrary to the Oklahoma Constitution. The district court had enjoined the Public Employees Relations Board from administering the law.

I am quick to note that the decision of the Oklahoma Supreme Court in *City of Enid* is not entitled to stare decisis effect by the courts of the State of California, but as persuasive authority I find *City of Enid* to be persuasive.

In my view, I find *City of Enid* more compelling for a decision which would uphold constitutionality, had the Oklahoma Supreme Court been so inclined, than attempting to uphold a constitutional challenge to the special legislation under the conditions existing at the time of enactment of Government Code section 3504.5, subdivision (c). In short Government Code section 3504.5, subdivision (c) was obtained by and applies to a modest and even infinitesimal number of members in the physicians union when compared with the 4 million population designation set forth in the statute. It is not a desirable climate for either the union or county to be negotiating under the cloud of a statute which in all probability, in my view, is unconstitutional.

However, for the reasons previously stated, I concur in the majority opinion.

Respondents' petition for review by the Supreme Court was denied October 12, 2005.