Filed 5/29/13  Jernagin v. City of Los Angeles CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| RICHARD JERNAGIN,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CITY OF LOS ANGELES,<br><br>Defendant and Appellant, | B241411<br><br>(Los Angeles County<br>Super. Ct. No. BC356014) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Emilie H. Elias, John Shepard Wiley, Jr., Judges.  Affirmed.

Liebert Cassidy Whitmore, Brian P. Walter, Alex Y. Wong; and Carmen A. Trutanich, Los Angeles City Attorney, for Defendant and Appellant.

Law Offices of Matthew L. Taylor, Matthew L. Taylor; Law Offices of Michael D. Myers and Michael D. Myers for Plaintiff and Respondent.

_____

In this class action on behalf of sanitation truck drivers employed by the City of Los Angeles, the trial court granted class certification and ruled in the plaintiffs' favor on the certified liability issue. Upon the parties' stipulation the court then severed one individual plaintiff from the class, heard that plaintiff's damage claim, and entered judgment for $8,304.08 against the City of Los Angeles for its failure to provide that plaintiff with "off duty" meal breaks on 310 occasions. The claims of the remaining class members were stayed pending the outcome of this appeal.[1]

The City of Los Angeles seeks reversal of the judgment, contending that the trial court erred in imposing liability against it on two grounds: that as a charter city it is exempt from the Labor Code and wage order provisions on which the liability determination rests; and that in any event its rules and regulations do not render the meal breaks of its sanitation truck drivers on-duty meal breaks, rather than off-duty meal breaks, as the trial court ruled they do. We conclude that with respect to its sanitation truck drivers, the City is not exempt from the state-law rules relating to meal breaks; and that the constraints placed on the plaintiff sanitation truck drivers during the meal breaks provided by the City's rules render them on-duty meal breaks, for which compensation is required. We therefore affirm the judgment in favor of the individual plaintiff and against the City of Los Angeles.

## BACKGROUND

A class action complaint filed in July 2006 alleged that the defendant City of Los Angeles (the City) failed to provide meal breaks to sanitation truck drivers employed by its Bureau of Sanitation/Recycling Collection Division of the Department of Public Works, in violation of law. The plaintiff contended that he and the putative class members routinely worked more than five hours per day without receiving a 30-minute, duty-free meal break, in violation of Labor Code sections 226.7 and 512, and Industrial Welfare Commission (IWC) Wage Order 9-2001 (Cal. Code Regs., tit. 8,

---

[1] This explains why the case caption in this court differs from the trial court caption, which identifies Jose Gravina—who is not a party to this appeal—as the plaintiff.

§ 11070) (Wage Order 9).[2]  The complaint sought monetary damages and other relief, including wages for one additional hour for each work day that a meal break was not provided.  The City answered on January 31, 2007.

The City moved for judgment on the pleadings, contending that its constitutional powers as a charter city exempt it from sections 226.7 and 512, and from the meal-break provisions of Wage Order 9.  Following extensive briefing, the trial court (Hon. Emilie H. Elias) denied the motion on August 24, 2007.  In its written ruling the trial court found that Wage Order 9 does apply to the City's sanitation truck drivers, and that Wage Order 9 constitutes a valid exercise of state police power to address the public hazard arising from fatigued drivers of large vehicles in public areas in California, a matter of statewide concern that overrides the constitutional right of charter cities to exercise plenary authority over their employees' compensation.

On November 16, 2007, this court summarily denied the City's petition for writ relief from that ruling.

The City then renewed its motion for judgment on the pleadings, contending that new case law precluded the application of  meal break requirements to charter cities.  The trial court denied the motion on December 2, 2008.

On March 13, 2009, this court summarily denied the City's petition for writ relief from that ruling.  The Supreme Court denied review on May 13, 2009.

On March 29, 2011, Judge Elias entered an order granting class certification for a plaintiffs' class consisting of City employees working as sanitation drivers from July 26, 2003 to and including the date of trial.  The issue certified for trial was whether the City's policies regarding meal breaks restricted sanitation drivers so as to render their meal

---

[2] Statutory references are to the Labor Code unless otherwise identified.  Section 512, and subdivision 11 of Wage Order 9, prescribe meal periods.  Section 226.7, subdivision (a), prohibits an employer from requiring an employee "to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission." Employers who violate these requirements must pay premium wages.  (§ 226.7, subd. (b); Wage Order 9, subd. 11(D).)

breaks "on duty," rather than "off duty" meal breaks, requiring compensating payments under section 226.7.

Following trial on that liability issue, on December 5, 2011, the trial court (Hon. John Shepard Wiley, Jr.) ruled against the City, holding that the meal breaks provided by the City must be classified as "on-duty" meal breaks rather than "off-duty" meal breaks.

On the trial court's recommendation, the parties stipulated to sever the claims of Richard Jernagin, an individual member of plaintiffs' class, in order to enable entry of a final appealable judgment. (See See Code Civ. Proc., § 904.1.) The stipulation included provisions staying the damage claims of other class members until either further order or the completion of the City's appeal from a judgment favoring Mr. Jernagin, and waiving any prevailing party costs and attorney fees relating to the severed case.

The parties then stipulated to evidence of Mr. Jernagin's damages. On April 30, 2012 the trial court entered judgment in the amount of $8,304.08 in Mr. Jernagin's favor individually and against the City. The City filed this timely appeal from the judgment on May 17, 2012.[3]

## DISCUSSION

"The decision as to what areas of governance are municipal concerns and what are statewide concerns is ultimately a legal one," subject to independent review. (*State Building & Construction Trades Council of California v. City of Vista* (2012) 54 Cal.4th 547, 558; *Roble Vista Associates v. Bacon* (2002) 97 Cal.App.4th 335, 339.)

The City's appeal from the judgment raises two issues underlying the trial court's liability determination. First, do the legislative and administrative provisions of sections 512 and 226.7, and Wage Order 9, apply to the meal breaks provided by the City to its sanitation truck drivers? On appeal, the City argues that they do not. Second, if these

---

[3] By stipulation, the parties purported to reserve for future adjudication an issue whether the class members' assigned work schedules prevented them from taking legally compliant meal breaks each work day. Neither the record nor the parties' briefs address the impact that entry of a final judgment in Mr. Jernagin's individual case might have on his future ability to join in resolution of any pending issues.

4

provisions do apply, do the meal breaks provided by the City to its sanitation-truck drivers comply with them, by relieving the drivers of all duties and employer control during a 30-minute meal break for each five-hour period worked? The trial court held that they do not. On appeal, the City argues that they do.

1. **The Provisions Of Sections 512 & 226.7, And Of Wage Order 9, Govern The Meal Breaks The City Must Provide To Its Sanitation Truck Drivers.**

The City contends, as the first step in its argument that it is exempt from compliance with the Labor Code and wage order provisions governing employee meal breaks, that meal breaks constitute a matter of employee compensation, which is, under article XI, section 5, of the California Constitution, exclusively a "municipal affair."[4]

In approaching this issue we bear in mind our Supreme Court's admonitions in a similar context: "'Unlike the federal Constitution, which is a grant of power to Congress, the California Constitution is a limitation or restriction on the powers of the Legislature. [Citations.] Two important consequences flow from this fact. First, the entire law-making authority of the state, except the people's right of initiative and referendum, is vested in the Legislature, and that body may exercise any and all legislative powers which are not expressly or by necessary implication denied to it by the Constitution. [Citations.] In other words, "we do not look to the Constitution to determine whether the legislature is authorized to do an act, but only to see if it is prohibited." [Citation.] [¶] Secondly, all intendments favor the exercise of the Legislature's plenary authority: "If there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action. Such restrictions and limitations

---

[4] In the trial court the City contended that Wage Order 9 does not apply to the City's sanitation truck drivers because it applies only to commercial drivers who transport "persons or property"—and that the garbage and waste that is collected by the City's sanitation truck drivers is neither. The plaintiffs sought to amend their complaint to allege that their job involves hauling "property," if necessary to avoid dismissal. However, the trial court ruled that "the transport of garbage and waste by City's sanitation drivers constitutes the transport of 'property' within the meaning of Wage Order 9." The City does not challenge that ruling on appeal.

[imposed by the Constitution] are to be construed strictly, and are not to be extended to include matters not covered by the language used."' [Citations.] On the other hand, 'we also must enforce the provisions of our Constitution and "may not lightly disregard or blink at . . . a clear constitutional mandate."' [Citation.]" (*County of Riverside v. Superior Court* (2003) 30 Cal.4th 278, 284-285.)

### a. The home rule doctrine deprives the state of power to legislate with respect to the City's municipal affairs.

Article XI, section 5, subdivision (a), of the California Constitution permits charter cities to include "home rule" provisions in their charters, allowing them to "make and enforce all ordinances and regulations in respect to municipal affairs" without restriction by the general laws of the state. Los Angeles is a charter city whose charter contains such a home rule provision. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1082; Los Angeles City Charter, art. I, § 101.)

Article XI, section 5, subdivision (b)(4) of the Constitution grants to cities with home-rule charter provisions the power to set the compensation of their own employees (effectively defining employee compensation as a municipal affair). With respect to municipal affairs, city charters "shall supersede all laws inconsistent therewith." (Cal. Const., art. XI, § 5, subd. (a).)

The analytical framework for resolving whether a matter falls within the home rule authority of a chartered city is set forth in *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1991) 54 Cal.3d 1, 16-17, recently repeated in *State Building & Construction Trades of California v. City of Vista*, *supra*, 54 Cal.4th 547: "First, a court must determine whether the city ordinance at issue regulates an activity that can be characterized as a 'municipal affair.' [Citation.] Second, the court 'must satisfy itself that the case presents an actual conflict between [local and state law].' [Citation.] Third, the court must decide whether the state law addresses a matter of 'statewide concern.' [Citation.] Finally, the court must determine whether the law is 'reasonably related to . . . resolution' of that concern [citation] and 'narrowly tailored' to avoid unnecessary interference in local governance [citation]. 'If . . . the court is persuaded that the subject

6

of the state statute is one of statewide concern and that the statute is reasonably related to its resolution [and not too broad in its sweep], then the conflicting charter city measure ceases to be a "municipal affair" pro tanto and the Legislature is not prohibited by article XI, section 5(a), from addressing the statewide dimension by its own tailored enactments.' [Citation]." (*Id*. at p. 556.)

The determination whether a particular matter is one of statewide concern sufficient to overcome its reservation to the City as a strictly municipal affair "is a judicial function to be determined upon the facts and circumstances surrounding a given case," based on the legislative purpose and the factors that influenced the Legislature to adopt the general law. (*City of Los Angeles v. State of California* (1982) 138 Cal.App.3d 526, 532.)

### b. Sections 512 and 226.7 and Wage Order 9 purport to govern meal breaks for the City's sanitation truck drivers.

Meal periods "have long been viewed as part of the remedial worker protection framework. [Citations.]" *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1105.) Section 512, effective January 1, 2000 (Stats. 1999, ch. 134, § 6), codified meal-break requirements for employees working more than five hours in one day, requiring employers to provide employees with meal breaks "of not less than 30 minutes" for workdays of more than five hours, and to provide two 30-minute meal breaks for workdays of more than 10 hours. (§ 512, subd. (a).) Section 226.7 allows the IWC to regulate meal breaks. Subdivision (a) of that section provides that "[n]o employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission." Subdivision (b) fixes the compensation to be paid by an employer for its failure to provide a mandated meal break. (*Murphy v. Kenneth Cole Productions, Inc.*, *supra*, 40 Cal.4th at p. 1114.)

In 2003, the Legislature added section 512.5, permitting the IWC to adopt a wage order applying to public employee drivers.[5] Consistent with that provision, in 2004 the IWC amended Wage Order 9 (which applies to the transportation industry) to make its meal break provisions apply to "commercial drivers employed by government entities."[6]

In its current form, Wage Order 9 provides (with some exceptions not relevant here) that a public-employee commercial motor vehicle operator is entitled to a minimum 30-minute meal break after each five hours worked, and that unless the employee is relieved of all duty during the break, "the meal period shall be considered an 'on duty' meal period and counted as time worked." (Wage Order 9, subd. 11(C).)

### c. The City's authority over meal breaks afforded to its sanitation truck drivers is not exclusively a municipal affair.

It is true that employee meal breaks are for some purposes classified as a matter of employee compensation. In *Murphy v. Kenneth Cole Productions, Inc.*, *supra*, 40 Cal.4th

---

[5] Labor Code section 512.5 provides: "[I]f the Industrial Welfare Commission adopts or amends an order that applies to an employee of a public agency who operates a commercial motor vehicle, it may exempt that employee from the application of the provisions of that order which relate to meal periods or rest periods, consistent with the health and welfare of that employee, if he or she is covered by a valid collective bargaining agreement."

[6] The IWC was "'the state agency empowered to formulate regulations (known as wage orders) governing employment in the State of California.' [Citations.]" (*Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 581; *Dimon v. County of Los Angeles* (2008) 166 Cal.App.4th 1276, 1290.) The IWC's promulgation of wage orders is a quasi-legislative endeavor (*Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 702; *Dimon v. County of Los Angeles*, *supra*, 166 Cal.App.4th at p. 1290.) The Labor Code granted the IWC authority to provide for "maximum hours of work and standard conditions of labor for employees," and proscribed employment in violation of its orders. (Lab. Code, § 1198.) Although the IWC was defunded by the Legislature effective July 1, 2004, its wage orders remain in effect. (*Murphy v. Kenneth Cole Productions*, *supra*, 40 Cal.4th at p. 1102, fn. 4; *Huntington Memorial Hospital v. Superior Court* (2005) 131 Cal.App.4th 893, 902, fn. 2.) IWC wage orders are "presumptively valid" legislative regulations (*Martinez v. Combs* (2010) 49 Cal.4th 35, 65), "to be accorded the same dignity as statutes." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1027.)

at p. 1114, the court implied that meal breaks are a matter of employee compensation, by holding that—for purposes of the statute of limitations—the payment provided by Section 226.7 for employees who have been deprived of required meal breaks "is a premium wage intended to compensate employees . . . ." The case of *In re Work Uniform Cases* (2005) 133 Cal.App.4th 328, 333, held that an employer's payment for work uniforms is a matter of employee compensation that under article XI of the constitution is within the exclusive power of cities and counties to regulate. More recently, *Curcini v. County of Alameda* (2008) 164 Cal.App.4th 629, and *Dimon v. County of Los Angeles*, *supra*, 166 Cal.App.4th at page 1283, held that, as applied to county-employed prison chaplains and probation officers, the meal-break provisions of Sections 512 and 226.7 "are matters of compensation within the county's exclusive constitutional purview." (*Curcini v. County of Alameda*, *supra*, 164 Cal.App.4th at p. 645.)[7] Faced with these authorities, respondent does not dispute that meal breaks can be classified as matters of employee compensation, nor that employee compensation is ordinarily a municipal affair, free from state control.[8]

However, these decisions do not establish that the City has exclusive authority, free from state control, with respect to the meal breaks it affords to its sanitation-truck drivers, or with respect to the compensation that it must pay to those who have been deprived of required meal breaks. The decision in *In re Work Uniform Cases* held that the Labor Code provision sought to be enforced in that case was not a worker safety

---

[7] When analyzing issues involving the scope of powers over issues of employee compensation delegated under article XI of the constitution, courts have applied interchangeably the reasoning from cases that involve counties and cities. (*Curcini v. County of Alameda*, *supra*, 164 Cal.App.4th at p. 643.)

[8] The existence of the home rule provision in the City's charter dispels respondent's contention that the record presents no conflict between the laws or regulations of the City and of the state. The complaint alleges that members of the plaintiffs' class were denied meal breaks required by Labor Code sections 512 and 226.7, and Wage Order 9. The City charter authorizes the City to regulate its employees' compensation—which includes meal breaks—thereby constituting a charter provision that conflicts with the state's statutory and administrative mandates respecting meal breaks for public employees.

9

statute affecting a statewide interest in public safety. (133 Cal.App.4th at p. 342.) And the plaintiffs in *Curcini v. County of Alameda*, *supra*, 164 Cal.App.4th 629, and *Dimon v. County of Los Angeles*, *supra*, 166 Cal.App.4th 1276, were prison chaplains and probation officers, whose meal and rest breaks would have no apparent impact on matters of statewide public safety.

The Labor Code and wage order provisions at issue in this case do deal with compensation. But unlike in the cases cited above, they do so in the context of ensuring that the City's employees, who drive large commercial trucks on its streets and highways, will be afforded reasonable meal and rest breaks—not just for their own health and comfort, but for the public safety as well. Meal break requirements may be classified for some purposes as municipal affairs over which the City exercises exclusive control; but that classification is not controlling here.

### d. The City is not exempt from compliance with general laws governing matters of statewide concern.

Matters of local concern may be trumped by statewide interests, such as public health, welfare, and safety, where competing regulations involve both. "There must always be doubt whether a matter which is of concern to both municipalities and the state is of sufficient statewide concern to justify a new legislative intrusion into an area traditionally regarded as 'strictly a municipal affair.'" Any doubt, however, "'must be resolved in favor of the legislative authority of the state.' [Citation.]" (*Baggett v. Gates* (1982) 32 Cal.3d 128, 140; *City of Los Angeles v. State of California*, *supra*, 138 Cal.App.3d at p. 533.)

The trial court found that the legislative amendment permitting the application of Wage Order 9 to City sanitation truck drivers was enacted in part to address concerns about having "fatigued drivers driving large vehicles in public areas in California," and for that reason the provisions "can be seen as an exercise of state police power to address a public hazard, an unambiguous matter of statewide concern." On that basis the court concluded that the City is not exempt from compliance with sections 512 and 266.7 and Wage Order 9, and denied the City's motion for judgment on the pleadings.

10

The City disputes this ruling, arguing that the state's meal break regulations were imposed to benefit the affected employees, rather than to address any statewide safety concern. But the proposition cannot stand that as a form of compensation, meal breaks are absolutely immune from general law regulation despite any basis they may have in statewide concerns. Logically, that proposition would presume that any matter of local concern is wholly immune from state-law regulation, without regard to concurrent statewide interests; that when a matter is of both local and statewide concern, the local regulation of that subject must prevail.

Settled law dictates the opposite result. Local concerns are trumped by statewide interests—such as public health, welfare, and safety—when both are involved in competing laws and regulations. Where statewide concerns are involved, charter cities are subject to some laws that concern municipal affairs, as the City concedes.[9]

When state law regulations affect both local and statewide concerns, the "general law prevails over local enactments of a chartered city, even in regard to matters which would otherwise be deemed strictly municipal affairs, where the subject of the general law is of statewide concern." (*Professional Fire Fighters, Inc. v. City of Los Angeles*, *supra*, 60 Cal.2d at p. 292; *Abbott v. City of Los Angeles* (1960) 53 Cal.2d 674, 681 ["When there is a doubt as to whether an attempted regulation relates to a municipal or to a state matter, or if it be the mixed concern of both, the doubt must be resolved in favor of the legislative authority of the state"]; *Los Angeles County Safety Police Assn. v.*

---

[9] For example, Vehicle Code section 34501.2 establishes maximum working hours for commercial vehicle drivers, and Vehicle Code section 34503 prohibits any political subdivision—including any charter city—from adopting any ordinance or regulation that is inconsistent with the Department of the California Highway Patrol's regulations. (See also *Professional Fire Fighters, Inc. v. City of Los Angeles* (1963) 60 Cal.2d 276, 294-295 [right of charter city employees to join unions is matter of statewide concern, not subject to local control]; *City of Los Angeles v. Industrial Acc. Com.* (1965) 63 Cal.2d 242 [state laws governing amount of injured workers' pension payments trumps local ordinances dealing with employee pensions and compensation]; *Schifando v. City of Los Angeles*, *supra*, 31 Cal.4th 1074 [state employment-discrimination laws preempt charter cities' local provisions on that subject].)

11

*County of Los Angeles* (1987) 192 Cal.App.3d 1378, 1386 ["The California Constitution's home rule provisions do not place police departments of charter cities beyond the reach of statutes addressing matters of statewide concern, even where those statutes affect local regulation."].) Nothing in *Curcini v. County of Alameda*, *supra*, 164 Cal.App.4th 629, or *Dimon v. County of Los Angeles*, *supra*, 166 Cal.App.4th 1276, is inconsistent with this conclusion; the duties of neither prison chaplains nor probation officers require their safe operation of heavy equipment on the state's public highways during long workdays.

### e. Notwithstanding local concerns, the requirements for public-employee meal breaks is a matter of statewide concern, justifying state regulation.

The case of *Industrial Welfare Com. v. Superior Court*, *supra*, 27 Cal.3d 690, sets forth the standard for review of IWC wage orders: "[I]n fulfilling its broad statutory mandate, the IWC engages in a quasi-legislative endeavor, a task which necessarily and properly requires the commission's exercise of a considerable degree of policy-making judgment and discretion. [Citations.] Because of the quasi-legislative nature of the IWC's authority, the judiciary has recognized that its review of the commission's wage orders is properly circumscribed." (*Id.* at p. 702.)

The trial court found that one ground for permitting the IWC to apply its meal-break regulations to government-employed commercial drivers "was to address the public safety concern created by fatigued governmental drivers driving large vehicles in public areas for multiple hours without breaks." That finding is supported by both the record and the law.

""""California courts have long recognized [that] wage and hours laws 'concern not only the health and welfare of the workers themselves but also the public health and general welfare.'"" (*Gentry v. Superior Court* (2007) 42 Cal.4th 443, 456; *Franco v. Athens Disposal Co., Inc.* (2009) 171 Cal.App.4th 1277, 1294.) Although meal and rest period requirements are part of "the remedial worker protection framework," (*Murphy v. Kenneth Cole Productions, Inc.*, *supra*, 40 Cal.4th at p. 1105), the health and safety of the

12

public on the highways is also dependent upon the health and safety of commercial drivers of large and heavy vehicles.

The IWC had received testimony that "[s]ome commercial drivers operate vehicles 45 feet long weighing 80,000 pounds," which "creates a public safety hazard due to driver fatigue" when meal breaks and rest breaks are not provided. As the trial court explained, "I find again that there is an overriding state interest in having [the City's sanitation truck drivers] safe, actually on safe highways, on all the freeways, state freeways," adding that in Los Angeles a driver can't get around "without ending up on one of the state highways," thereby implicating a state interest. The trial court concluded that "[i]t is not the Court's job to second-guess the IWC" about whether and how to apply its public safety goals and the meal break requirements to governmental commercial drivers.[10]

As the court held in *City of Los Angeles v. the State of California*, *supra*, 138 Cal.App.3d 526, "[t]he resolution of the question whether a particular matter is 'strictly' a municipal affair or of statewide concern is a judicial function to be determined upon the facts and circumstances surrounding a given case," including the factors that influenced the state to legislate with respect to the issue. (*Id.* at p. 532.) Because the IWC's application of the meal break provisions to governmental commercial transport drivers "was partly to address public safety concerns arising from fatigued drivers driving large vehicles in public areas in California," the trial court found that it was "an exercise of police power to address a public hazard, an unambiguous matter of statewide concern." Our review leads this court to the same conclusion.

_____

[10] The fact that under certain circumstances employers and employees are permitted to agree to waive the requirement of Wage Order 9 that "the employee [must be] relieved of all duty during a 30 minute meal period," does not dispel the rule's public-safety basis, the trial court held. The waiver provision of section 11 applies only where "the nature of the work [for example, for some public transit bus drivers] prevents an employee from being relieved of all duty," and only with the revocable consent of both the employer and the employees.

13

## 2. The Trial Court Correctly Found That The City's Rules Governing Employee Meal Breaks Do Not Provide Its Sanitation Truck Drivers With Off-Duty Meal Breaks.

### a. An off-duty meal period is an uninterrupted 30-minute period during which the employee is relieved of all duty or employer control.

Section 512, subdivision (a) and corresponding wage order provisions require employers to provide a meal period that "relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." (*Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th at p. 1040, see pp. 1035, 1037.) Echoing this interpretation of section 512, subdivision 11(C) of Wage Order 9 adds that "[u]nless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked. . . ." And subdivision 11(D) of Wage Order 9 mirrors section 226.7's requirement that for each required meal period the employer fails to provide, it must pay the employee for one additional hour at the employee's normal rate of compensation.

### b. The evidence relating to the determination of the City's liability.

Following the trial court's certification with respect to the class-action claim that the meal breaks provided by the City to its sanitation truck drivers constitute "on-duty" rather than "off-duty" meal breaks, the court (Hon. John Shepard Wiley, Jr.) held a bench trial of that issue upon stipulated facts, augmented by live testimony.[11]

---

[11] The parties stipulated to the admission into evidence of six trial exhibits, consisting of copies of the documents identified as "Rules and Regulations for Employees of the Solid Resources Collection Division of the Bureau of Sanitation of the Department of Public Works City Los Angeles," dated June 1995, and as revised March 2006, and September 2010; a copy of "Department of Public Works Personnel Policies, Personnel Policy #7"; a copy of "September 2004 Memorandum of Understanding between Management and SIEU, Local 347, AFL-CIO"; and "December 2007 Memorandum of Understanding between Management and SIEU, Local 347, AFL-CIO." (The stipulation also quotes and characterizes selected provisions from these documents.

The parties did not dispute that the City employs approximately 650 sanitation truck drivers, nor that the "vast majority" of the drivers—perhaps as many as 95 percent—work in one-person crews. Since 1995, the sanitation department's rules and regulations (which its employees are required to follow, have provided for 30-minute lunch breaks "which will, in general, be taken reasonably close to the middle of the shift. The members of a two person crew must decide and agree upon one time and place for lunch. . . . Employees should not generally arrange to meet at local establishments to avoid the appearance to the general public of 'congregating.'"

Beginning with the rules and regulations issued in 2006, the rule concerning working hours has also prohibited sleeping during the work shift, "including the lunch break" and rest periods. On June 30, 2007, Personnel Policy #7 was formally adopted, identifying "Failure to remain alert and responsive while on duty, for example, sleeping on the job" as an offense justifying discipline. However, "a substantially identical personnel policy" was in effect before that date.

A City sanitation department supervisor of safety and training programs testified that the rule against congregating with other drivers during lunch was established due to the space needed to park the large sanitation trucks, two of which might occupy approximately 80 or more feet of parking space. The trucks are not permitted on private parking lots due to their weight, so "[a]s you put more vehicles in one area, you're taking up not only parking area but you're also creating an unsafe condition for others that may be coming in and out of shopping centers or driveways." Sanitation truck crews are regularly instructed not to congregate in any one area, but typically no precise number of trucks or crews is mentioned. Discipline was not used to enforce the rule. When a supervisor observed a violation of the noncongregation rule, he or she would speak individually with the involved drivers the next day, addressing safety and other concerns and advising them not to have multiple vehicles at one location.

Another department supervisor testified that the rules do not specify a set number of trucks that are prohibited from congregating, because the number "is not the issue. It depends on the parking availability and where this is occurring." He had seen as many as

15

four or five sanitation trucks parked at a location for a lunch break, but was not aware that any drivers had ever been disciplined for violating the noncongregation rule.  He testified that the rule addressed not just safety concerns, but also complaints from the general public and from restaurant owners because of the space used by parked trucks.

Class representative Gravina testified that the noncongregation rule was described by the City as "Two is company.  Three's a crowd," indicating that no more than two vehicles should be parked together.  Although he had seen the rule violated, however, he had never heard of anyone being disciplined for violating the noncongregation rule.[12]

The trial court found that the City's rules and regulations provide for 30-minute meal breaks for sanitation truck drivers, during which "[t]heir time is mostly their own," in that they don't have to eat, collect trash, stay with their trucks, or monitor the radio.  Under the City's rules, "[i]t is permissible to run personal errands, like going to the grocery store or dry cleaners," and "to drive to restaurants within a reasonable distance from their route to pick up food or to eat at the table."  However (in addition to being required to lock the truck and secure its hydraulic arm if they leave the truck), sanitation truck drivers have "four main constraints" during a meal break:

"Don't sleep.

"Don't 'congregate.'

"Agree with your other crew member [if any] when and where lunch will be.

"If you eat, make it somewhere 'on the route.'"

The court found that the "no congregating" rule "forbids more than four drivers eating together," and more than two trucks from parking at the same lunch place.

On these facts the court held that the duties "to stay awake and to avoid congregating" prevent the drivers from being relieved of "'all duty'" during their meal breaks.  "The drivers are thus subject to the City's control during their meal periods."

_____

[12] Although the evidence admitted at trial does not explain the City's purpose in prohibiting sleeping during meal and rest breaks, a declaration filed with the City's trial brief explained that sanitation department employees "wear uniforms and the public will call and complain if they see [employees] sleeping in or near their trucks."

16

Although "[t]he City would win under a 'relieved of MOST duty' standard," the court held, "that is not the law." Under the "relieved of all duty" standard in Wage Order 9, the meal breaks provided by the City to its sanitation-truck drivers are "on-duty" and not "off-duty" meal breaks.

### c. Under the City's rules the City's sanitation-truck drivers are not relieved of all duty during meal breaks.

Our task is to determine whether the trial court correctly understood and interpreted the evidence in concluding that the City's rules prevent its sanitation-truck drivers from being relieved of all duties, and make them "subject to the City's control during their meal periods." This is a question of law, subject to independent review. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799; *Madera Police Officers Assn. v. City of Madera* (1984) 36 Cal.3d 403, 409, fn. 7.) In this connection "we should not engage in needless policy determinations regarding wage orders the IWC promulgates. '[R]eview of the [IWC]'s wage orders is properly circumscribed. . . . "A reviewing court does not superimpose its own policy judgment upon a quasi-legislative agency in the absence of an arbitrary decision . . . .""" (*Morillion v. Royal Packing Co.*, *supra*, 22 Cal.4th at p. 587; *Industrial Welfare Com. v. Superior Court, supra*, 27 Cal.3d at p. 702.)

No case fully resolves the question whether the rules against sleeping and congregating (or either of them) constitute sufficient restrictions on the employee's freedom to render their meal breaks "on-duty" rather than "off duty," as the trial court found they do. However, the Supreme Court recently clarified the law regarding meal periods in *Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th 1004. There, the Court concluded that the defining characteristic of an off-duty meal period is its duty-free nature. (*Id*. at p. 1035.) Although an employer need not ensure that employees do no work during meal breaks, in order for the meal break to be classified as an off-duty break the "'worker must be free to attend to <u>any</u> personal business he or she may choose during the unpaid meal period.'" (*Id*. at 1036.)

17

In this case the trial court concluded that the City's rules do not afford its sanitation truck drivers uninterrupted 30-minute periods in which they are relieved of any duty or employer control and are free to come and go as they please, most notably by limiting their right to congregate with co-workers, and by denying them the right to sleep. The noncongregation rule, effectively precluding more than two drivers from stopping together for a meal break (because almost all trucks have one-person crews), deprives the drivers of opportunities for meaningful interaction with co-workers, even when work has stopped. So too, driver fatigue inevitably results from driving a heavy truck for long periods in an urban setting. Permitting a brief meal-break nap might be expected to refresh and reinvigorate a tired driver, increasing alertness and enhancing public safety.

It is undoubtedly true that congregating more than two long and heavy sanitation trucks at one location may justify concerns about both safety and public relations, as the evidence indicates. The City undoubtedly may (and does) require its drivers to park their trucks only in safe and appropriate locations. Similarly, there may be important risk factors and public-relations concerns that led the City to impose the rule against sleeping during meal breaks (suggested in a City trial brief, but not identified in the evidence). But even if these rules arise from legitimate concerns, neither of them is essential to the safe operation of the City's sanitation trucks.

Therefore once work has stopped for a required meal break, unless the City relieves is drivers of all duties and does not limit their ability to enjoy their time as they please, the meal break cannot be designated "off-duty." That is the test: whether the control exercised by the employer permitted the employees to use "'the time effectively for [their] own purposes.'" (*Morillion v. Royal Packing Co.*, *supra*, 22 Cal.4th at p. 586; *Bono Enterprises, Inc. v. Bradshaw* (1995) 32 Cal.App.4th 968.)

In *Morillion v. Royal Packing Co.*, *supra*, 22 Cal.4th 575, employees were required to travel to and from the employer's agricultural worksite on employer-provided buses—and therefore could not decide when to leave, which route to take to work, or which mode of transportation to use, and could not engage in activities such as running

18

errands, dropping children at school, or stopping for breakfast. (*Id.* at pp. 586-587.) Under the language of the applicable IWC wage order (the same as the wage order in this case), the Supreme Court found that because the employer-provided bus rides were mandatory, during that time the employees were "subject to the control of an employer," and therefore not off duty. The time spent on the employer-mandated bus rides was compensable as "hours worked." (*Id.* at pp. 578-579, 582-583.)

The court in *Bono Enterprises, Inc. v. Bradshaw*, *supra*, 32 Cal.App.4th 968, applied subdivision 11(C) of the applicable wage order to hold that an employee remains subject to the employer's control, and is not "relieved of all duty," if he or she is precluded from leaving the workplace during the meal period. "When an employer . . . thus prevents the employee from using the time effectively for his or her own purposes, that employee remains subject to the employer's control," and must be paid for that time. (*Id.* at p. 975.)

The rules governing meal breaks for City sanitation truck drivers seem well intended to free the drivers to undertake almost any endeavor during meal breaks, as long as their trucks are not driven far off their assigned routes and the equipment is secured in the drivers' absence. But the City's sanitation truck drivers nevertheless remain under the City's clear control during meal breaks: they may not congregate with other drivers, and they may not sleep. The duty-free meal-break requirement of the IWC wage orders, including Wage Order 9, must be liberally construed to accomplish the objective of protecting the welfare of the affected workers. (*Bono*, *supra*, 32 Cal.App.4th at p. 974.) During their meal breaks the City's sanitation truck drivers are not free in all respects to use "'the time effectively for [their] own purposes.'" (*Morillion v. Royal Packing Co.*, *supra*, 22 Cal.4th at p. 586.)

Applying these principles, we conclude that the trial court correctly determined that under the applicable rules, the City's sanitation-truck drivers are not relieved of all duties during their meal breaks, as required by section 512 and Wage Order 9, subdivision 11(C). As the trial court put it, "'[r]elieved of ALL duty' is different than 'relieved of MOST duty.'"

19

## DISPOSITION

The judgment is affirmed.  Pursuant to the parties' stipulation, neither party is entitled to recover its costs in this Court.

NOT TO BE PUBLISHED.


CHANEY, J.

We concur:


ROTHSCHILD, Acting P. J.


JOHNSON, J.